UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          vs.<br><br>LYLE WILSON,<br><br>                    Defendant. | 5:08-CR-50051-03-KES<br><br><br>ORDER DENYING MOTION FOR RELIEF UNDER THE FIRST STEP ACT |

Defendant, Lyle Wilson, moves for reconsideration of compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 680. Plaintiff, the United States of America, opposes the motion. Docket 687. For the following reasons, the court denies defendant's motion for compassionate release.

**BACKGROUND**

On June 19th, 2009, Wilson was found guilty of one count of conspiracy to distribute a controlled substance (cocaine) in violation of 21 U.S.C. §§ 846, 841(a)(1), and841(b)(1)(A)(ii); one count of conspiracy to distribute a controlled substance (marijuana) in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B); and one count of possession of a controlled substance with intent to distribute (cocaine) in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Docket 506. On September 25, 2009, the court sentenced Wilson to 240 months in custody on each count, all counts to run concurrent, and the following terms of supervised release:10 years on count one, 8 years on count two, and 6 years on count three, all terms to run concurrent. Docket 537; Docket 539 at 2-3. Wilson

appealed his conviction. Docket 548. The Eighth Circuit Court of Appeals affirmed the two conspiracy to distribution convictions but vacated the possession conviction. Docket 605. Based on the ruling of the Eighth Circuit Court of Appeals, the sentence was later modified to 240 months on counts one and two, followed by 10 years of supervised release on count one and 8 years of supervised release on count two, all to be served concurrently. Docket 609. Wilson's current anticipated release is June 13, 2025. *Find an Inmate*, Fed. Bureau of Prison, https://www.bop.gov/inmateloc/ (last visited on Sept. 28, 2020) (Register Number: 06229-073).

Wilson is incarcerated at Federal Prison Camp (FPC) Duluth in Duluth, Minnesota. *Id.* As of October 7, 2020, there are currently three active COVID-19 cases among FPC Duluth's inmates and staff, zero deaths from COVID-19, and one inmate has recovered from COVID-19. *See BOP: COVID-19 Update*, Fed. Bureau of Prison, https://www.bop.gov/coronavirus/ (last visited on Oct. 7, 2020).

Wilson is 59 years old. Docket 683 at 23. His chronic medical conditions include hyperlipidemia, prediabetes, and obesity. *Id.* at 22. In 2019, Wilson was diagnosed with prediabetes and obesity. *Id.* at 32. Wilson is 201 pounds and 66 inches tall. *Id.* at 5-6. Based on his weight and height, his body mass index (BMI) is 32.4. *Id.*

Wilson alleges he submitted a procedural request for relief with the warden of FPC Duluth, and as of April 13, 2020, he had not received a response. Docket 675 at 8-9; *see also* Docket 680 ¶ 1. Wilson claimed that the

2

justification behind the lack of response from the BOP was that the staff indicated they were unable to "timely respond" to inmate requests. Docket 675 at 8-9. This court denied Wilson's initial motion for compassionate release (Docket 675) for failure to exhaust administrative remedies. Docket 679. The Federal Public Defenders Office then filed a motion for reconsideration of the court's order on Wilson's behalf. Docket 680. Wilson claims that FPC Duluth staff told the inmates that they were not answering any of the inmates' requests, and if the inmates wanted relief due to COVID-19, they should file a motion with the courts. Docket 680 ¶ 3; Docket 680-1. Therefore, Wilson requests reconsideration due to the BOP's inability to respond to his request, which hindered his ability to exhaust his administrative remedies as required by the statute. Docket 680.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release. § 603. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a sentence must comply with the 18 U.S.C. § 3553(a) sentencing factors and "applicable policy statements issued by the Sentencing

3

Commission[.]" 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" and that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(1) (U.S. Sentencing Comm. 2018). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Wilson argues that the risks posed by the global COVID-19 pandemic, together with his adverse health conditions satisfies the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 675 at 2-8. Wilson requests a sentence of time served and, if deemed necessary by the court, a period of home confinement as a condition of supervised release. *Id.* at 10; Docket 686 at 1; Docket 688 at 6.

## I.   Administrative Exhaustion

Previously, only the BOP Director possessed the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A).

4

Wilson argues that he exhausted his administrative remedies because the warden at FPC Duluth verbally told all inmates that he was denying all requests for compassionate release. Docket 680-1. Wilson alleges that based on this statement from the warden, Wilson could directly file with the court. *Id.*; Docket 680. The court concludes, however, that it does not need to opine on whether Wilson exhausted his administrative remedies because even if the administrative exhaustion requirements have been met and Wilson's request may be considered, Wilson is still not eligible for compassionate release under the "extraordinary and compelling reasons" provision.

## II.    Extraordinary and Compelling Reasons

Section 3582(c)(1)(A)(i) provides that the sentencing court may grant compassionate release based on "extraordinary and compelling reasons[.]" Congress did not define what constitutes "extraordinary and compelling." *See* 28 U.S.C. § 994(t). Rather, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples. *Id.* Prior to Congress passing the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios. U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). The four scenarios pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances. *Id.* Additionally, there is a fifth catch-all category for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through

(C)" as determined by the Director of the Bureau of Prisons. U.S.S.G. § 1B1.13 cmt. n.1(D).

After the FSA was passed, the Sentencing Commission did not update its policy statement because the Sentencing Commission has not had a quorum. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019) ("As the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to [compassionate-release] motions brought by defendants in the near future."). As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies. *See United States v. Rodd*, 2019 WL 5623973, at *3 (D. Minn. Oct. 31, 2019); *United States v. Brown*, 2020 WL 2091802, at *5-6 (S.D. Iowa Apr. 29, 2020). It is clear that Congress wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with applicable policy statements" from the Sentencing Commission. *See* 132 Stat. at 5239; 18 U.S.C. § 3582(c)(1)(A). But the Commission has not addressed whether the policy statement from the old regime is applicable to the new statute nor has it adopted a new policy statement. Because the First Step Act changed the way a compassionate release motion may be brought, "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges." *United States v. Condon*, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (citing *United States v. Fox*, 2019 WL 3046086, at *3

6

(D. Me. July 11, 2019); *United States v. Beck*, 425 F. Supp. 3d 573, 578-80 (M.D.N.C. 2019); *United States v. Cantu*, 423 F. Supp. 3d 345, 352-53 (S.D. Tex. 2019)); *see also United States v. Rivernider*, 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020). This uncertainty has not yet been addressed by the Eighth Circuit. *See United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020) ("We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13."); *see also United States v. Frith*, 2020 WL 4229160, at *2 (D.N.D. July 23, 2020).

Assuming that the policy statements continue to apply to compassionate release motions brought under the amended FSA, Wilson has failed to show that his medical conditions rise to extraordinary and compelling circumstances.

Wilson argues that his health conditions—hyperlipidemia, prediabetes, and obesity—put him at high-risk of severe illness if he contracts COVID-19. Docket 675 at 2-3, 6, 10. Because Wilson does not specify which provision of U.S.S.G. § 1B1.13 his motion falls within, the court will analyze it under the "catch all" provision of U.S.S.G. § 1B1.13 comment note 1(D) and the medical condition provision of comment note 1(A)(ii).

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. People with the following health conditions are at an increased risk of severe illness from COVID-19: cancer, chronic kidney disease, chronic obstructive pulmonary disease, immunocompromised state from organ transplant, obesity (a BMI of 30 or higher), serious heart conditions, sickle cell

7

disease, and Type II diabetes. *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (Sept. 11, 2020). The Centers for Disease Control and Prevention (CDC) also provided a list of medical conditions that *may* put a person at an increased risk of severe illness from COVID-19. *Id.* These medical conditions include asthma (moderate to severe), hypertension or high blood pressure, smoking, liver disease, and several others. *Id.*

The court has reviewed the medical records submitted in this case. Wilson's medical conditions include obesity, hyperlipidemia, and prediabetes. The CDC has identified that people who are obese (a BMI of 30 or higher) are at an increased risk of severe illness from COVID-19. With a BMI of 32.4, Wilson is slightly obese. But "the fact that [Wilson] suffers from obesity during the age of the COVID-19 pandemic does not necessarily mean, on its own, that extraordinary and compelling reasons justify the reduction of his sentence." *United States v. Williams*, 2020 WL 4756743, at *5 (E.D. Pa. Aug. 17, 2020); *see also United States v. McAbee*, No. 4:14-CR-40027-KES, 2020 WL 5231439, at *3 (D.S.D. Sept. 2, 2020) (finding defendant with asthma and a BMI of 30.8 or 31.7 did not establish extraordinary and compelling reasons); *United States v. Saenz*, No. 3:10-CR-30027-RAL, 2020 WL 4347273, at *5 (D.S.D. July 29, 2020) (finding defendant with other medical conditions and a BMI between 40 and 44.9 did not establish extraordinary and compelling reasons).

Wilson's other medical conditions—hyperlipidemia and prediabetes—are

8

not listed as a medical condition that might increase or increase the risk of severe illness from COVID-19. Wilson has not identified how any of his medical conditions prevent him from providing self-care in a correctional facility setting or how they amount to extraordinary and compelling circumstances.

While some of these chronic conditions may put Wilson at a higher risk of severe illness if he contracts COVID-19, that has not been the case as of yet. *See United States v. Fry*, 2020 WL 1923218, at *1 (D. Minn. Apr. 21, 2020) (holding that to merit compassionate release, inmate "must show more than a mere speculation of the possibility of contracting the virus."). Additionally, there is no evidence in the record to suggest he has not been able to manage these conditions while in the prison environment. Wilson is receiving medical attention and treatment for these conditions, which all appear to be stable or controlled. *See* Docket 683 at 9, 13, 16, 30-31, 39, 41. "Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) (internal quotation omitted). Thus, the court finds that Wilson does not satisfy the criteria under U.S.S.G. § 1B1.13 comment note 1(A) or U.S.S.G. § 1B1.13 comment note 1(D).

Additionally, Wilson's motion has not shown that the BOP's response to the pandemic at FPC Duluth has been inadequate in any way. *See United States v. Korn*, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) ("[T]he mere possibility of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard

against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme."). At the present time, there are three active COVID-19 cases among the inmates and staff at FPC Duluth and one inmate has recovered from COVID-19. "Thus, it appears that the facility has been responding to and defending against the threats of the virus in a vigorous and generally effective manner." *United States v. Williams*, 2020 WL 4756738, at *4 (E.D. Pa. Aug. 17, 2020); *see also United States v. Berry*, 2020 WL 4035457, at *3 (D.N.J. July 17, 2020) ("[G]iven the markedly restrained progression of the virus within FCI Schuylkill, as compared to within the Delaware Valley region generally, BOP's Action Plan appears to be having a positive impact."). Although Wilson is unable to practice preventative measures as effectively in custody as he would in home confinement, FPC Duluth encourages inmates to wash their hands frequently, wear facial masks, and practice social distancing when feasible. *See BOP Implementing Modified Operations*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Sept. 28, 2020). Wilson can do all those recommendations to some extent.

The court believes that Wilson's medical conditions are appropriately managed at FPC Duluth, that the facility is engaged in strenuous efforts to protect inmates against the spread of COVID-19, and that it would act to treat any inmate who does contract COVID-19. Although the court in no way underestimates Wilson's health conditions, such ailments, coupled with the present conditions at FPC Duluth, do not establish extraordinary and

10

compelling reasons justifying his early release.

Even assuming Wilson's medical conditions are "extraordinary and compelling reasons warrant[ing] such a reduction" under 18 U.S.C. § 3582(c)(1)(A)(i), the sentencing factors in § 3553(a) do not weigh in favor of a reduction. Wilson was found guilty of two counts of a conspiracy to distribute a controlled substance. Docket 539. At sentencing, this court stated that Wilson's role in the conspiracy was extraordinary because "at least 18 kilos of cocaine was brought on to the reservation and that is a huge amount for such a small population of people." Docket 566 at 39. Out of the entire conspiracy, Wilson was the only defendant who had a gun in his possession. *Id.* at 40. Wilson had a total offense level of 37 and a criminal history category of IV. PSR at ¶ 65. The court also considered his role in the conspiracy and his guideline sentence in relation to the other defendant's sentences. Docket 566 at 39-43. The guideline range for the offense was 360 months to life. PSR at ¶ 65. This court determined that a sentence below the guideline range was appropriate at 240 months and 10 years of supervised release. Docket 539 at 2-3. Wilson has only served approximately 70% of his sentence. Therefore, the court finds that Wilson's sentence of 240 months in custody with 10 years of supervised release continues to be appropriate for the seriousness of the crimes for which he was found guilty.

## CONCLUSION

Wilson has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that defendant's motion for relief under the First Step Act (Docket 680) is denied.

Dated October 7, 2020.

BY THE COURT:

/s/ Karen E. Schreier
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

12